RICHARD E. QUINTILONE II (SBN 200995)
ALVIN B. LINDSAY (SBN 220236)
**QUINTILONE & ASSOCIATES**
22974 EL TORO ROAD SUITE 100
LAKE FOREST, CA 92630-4961
TELEPHONE NO. (949) 458-9675
FACSIMILE NO. (949) 458-9679
E-MAIL: REQ@QUINTLAW.COM; ABL@QUINTLAW.COM;

DAREN H. LIPINSKY, ESQ. (SBN 190955)
**BROWN & LIPINSKY, LLP**
5811 PINE AVENUE, SUITE A
CHINO HILLS, CA 91709
TELEPHONE NO. (909) 597-2445
FACSIMILE NO. (909) 597-6199
EMAIL DLIPINSKY@AOL.COM

Attorneys for AMY CASEY individually and all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN ROGERS, an individual, and AMY CASEY, an individual, on behalf of themselves, and on behalf of all employees similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THD AT-HOME SERVICES, INC. dba HOME DEPOT, a Delaware Corporation; US REMODELERS dba HOME DEPOT INTERIORS, a Delaware Corporation; US HOME SYSTEMS. INC., an unknown corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 5:14-cv-02069-JGB-SP<br><br>**CLASS ACTION**<br><br>**Assigned for All Purposes To:**<br>**Judge: Jesus G. Bernal**<br>**Dept.: Courtroom 1**<br><br>**DECLARATION OF JAMES STEPHEN HUTTON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:    June 13, 2016<br>Time:    9:00 a.m.<br>Courtroom:   1<br><br>Complaint Filed: July 14, 2014<br>Removed: October 6, 2014<br>Amended Complaint: January 29, 2015 |

-0-
DECLARATION OF JAMES STEPHEN HUTTON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# DECLARATION OF JAMES STEPHEN HUTTON

I, James Stephen Hutton, hereby declare as follows:

1. I have personal knowledge of the facts set forth herein, and if called upon to testify regarding them, I could and would do so competently under oath.

2. I am employed as a sales consultant for Defendant THD AT-HOME SERVICES, INC. dba HOME DEPOT ("Home Depot") and US REMODELERS dba HOME DEPOT INTERIORS ("US Remodelers") (collectively "Home Depot"). I am a potential member of the putative Class in this action. I submit this Declaration in support of Plaintiff's Motion for Class Certification.

3. I was hired by Home Depot as sales consultant on **September 22, 2014** and am still employed as one.

4. I have been told by my managers that I am an exempt employee and as such, I am not entitled to overtime or even payment of a minimum hourly wage. Instead, I receive only commissions, plus whatever small bonus I am paid. I also receive reimbursement for a portion of the miles I have to drive for work, and a $6 per week cell phone allowance.

5. I live in Mountain Center, California, near Palm Desert. I am assigned to a branch office in Irvine/Costa Mesa, which is 138 miles from my home. I have been expected to make this drive several times on a weekly basis to go to sales meetings, training meetings, and conduct other conferences, meetings, and trainings.

6. I and the other sales consultants who work out of my branch are required to be at the Costa Mesa branch office for Mandatory Sales Meetings on two days per week. I was also often required to be at the branch for training meetings on one day a week. These meetings usually lasted approximately two hours. Driving to the branch takes me at least two hours, and usually more due to traffic, and I have to leave my home very early to be at the mandatory meetings on time. I was told I would not be paid for any of the time I spend driving to and from the branch or at the branch, and I was told I would not be reimbursed for driving to and from the branch.

7. When sales consultants are not on a sales appointment or at the branch office, we have been instructed by our managers to be in the Home Depot stores to promote what is known as "store connectivity." I have been assigned to 5 or 6 stores, and therefore spend a lot of my time there. If we are not near one of our assigned stores or at the branch, we are expected to go to any Home Depot store. I have been expected to go into the stores to meet with store associates and train them on the products and services we offer. The intent is also for us to build a rapport with all the store associates so that they will provide us with leads for customers for potential sales. We have also been instructed and trained that we should be in the stores as much as possible to generate leads on our own or from associates.

8. We are also expected to help customers at the store find products or the departments they are looking for, and to walk around to show our presence in our orange aprons. I am also expected to conduct product knowledge training, or "PK" training, with the sales associates at the stores, which could last anywhere from a few minutes to an hour. I and the other sales consultants have been told by managers that if we have no appointments, or only one in a day, we should be spending the rest of our time at the stores.

9. Because we are expected to be in the stores whenever we are not on a sales appointment, and I have been assigned to at least 5 stores, I spend the majority of my time each week in the stores or at my branch or driving to and from them. When I asked my manager why we are expected to spend so much time doing activities for which we receive no pay, he told me that was the way it is and that if I did not like it, he would promote me to a customer, meaning fire me.

10. I have been frustrated by the leads that were generated at the stores or by the store associates for me because they have not gone to me personally, and instead are entered in the system where it is then up to my manager to assign. There have been times when I would not receive the leads that I generated or were generated by a store associate for me because my manager assigned them to someone else.

11. We have also been given a lot of Smart Circle leads generated from paid contractors in the stores, but there are problems with these leads because they are not reliable and customers have been made promises that we cannot keep when we arrive for the in-home appointment. I believe my manager assigns the more reliable store generated leads to his favorite sales consultants, and gives others the Smart Circle leads. To address this possibility, Home Depot transitioned to a live calendar lead assignment system recently. However, in an e-mail that the company sent out recently, we were then told we would be going back to the old method of lead assignment, where they are sent to managers who then assign them to the sales consultants by e-mails, often late the night before or on the morning of the appointment. Home Depot also is further pushing the responsibility of sales consultants to self-generate leads, and we have been told we must generate at least two per week by our manager.

12. I work usually six days per week, and sometimes seven. I typically work 10-12 hours per day at a minimum. I would estimate that I receive on the average 2 leads for sales appointments per day, but often have only one. Appointments usually last approximately 90 minutes, and drive time can be anywhere from 30 minutes to 90 minutes. There has been high turnover at our branch, as there were over 20 sales consultants when I started and the number is now down to less than 10. It is difficult for any new sales consultant to make it because we work so much and get paid so little.

13. I have not been reimbursed for all my expenses, including for many of the hours I drive each day. Given that my branch office is 138 miles from my home, I drive 276 miles per day just to go to the branch when I am required to attend mandatory meetings. I have been told we are not reimbursed for these miles driving to and from the branch. I am also not reimbursed for the first and last 20 miles I drive each day, no matter what. I do not believe this is fair or legal, and have complained. In response, I was told that was just the way it is, and if I did not like it, I could work elsewhere. I estimate that I drive approximately 4,000 miles per month or more, and I purchased a new car about the time I started working for Home Depot which now has

over 100,000 miles.  The vast majority of these miles have been work related driving.

14.  Home Depot makes it very difficult to get reimbursed for the mileage that I do receive reimbursement for.  I submit reports that take months sometimes to be paid.  I am told frequently that the mileage expense reports I sent have been lost or never received.  Even when I e-mail them, I am told often that e-mails is down or simply do not receive a response.  Completing these reports each week takes a lot of time, and I estimate it can take up to 8 hours per week.  The reason is Home Depot requires us to calculate the mileage for every entry by printing out door to door directions and attaching them to the reimbursement request.  I have to print these out and am not reimbursed for any of the expense involved.

15.  I use my cell phone throughout the day to perform my job and am expected to make a lot of work related calls or respond to text messages.  I also use data from my plan to look up information on the internet or to look up mileage and directions.  I receive a $6.00 per week allotment for my phone, but this is not enough to come near covering the expense for the portion of my cell phone bill dedicated to work related calls and data.  I have never been told that we could chose to use a proration method where we submit cell phone bills for actual reimbursement.  I was automatically set to receive the allowance, and did not know I had any other option.

16.  I have also never been provided with any business cards and have spent money for marketing materials and office supplies that are necessary to do my job that are never reimbursed.  These expenses include buying ink cartridges for all the printing I do of marketing materials and promotion sheets, and purchasing file folders and paper and other office supplies I need.

/ / /

/ / /

/ / /

17. I have also been very upset because I do not receive all the commissions that I earn on completed sales. Home Depot sends measure techs out behind us to check our measurements, and in this "re-cast" we usually get a large percentage of our owed commissions deducted. In the end, a 10% commission we are supposed to receive can be reduced to as little as 2%. We are told that the reason is because we did something wrong, like not measuring correctly. However, my manager can never explain to me why my commission is so much less than it is supposed to be.

18. The wage statements we receive do not break down our commissions on them. We instead receive a separate piece of paper that just lists a breakdown of the total commissions paid by the job, without providing any details regarding why the final number is so much less than it is supposed to be. I have therefore asked to see the actual re-cast paperwork on my jobs to check to see what happened, and my request has been honored only once. Even after I reviewed that paperwork, it was completely unclear how Home Depot arrived at my final commission number. I have again been told by my manager that this is the way it is, and if I do not like it, I can find another job.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on **April 25, 2016** in Mountain Center, **California**.

_____
JAMES STEPHEN HUTTON

# PROOF OF SERVICE

I, the undersigned, declare as follows:

I am a citizen of the United States, over the age of 18 years, and not a party to the within action. I am an employee of or agent for Quintilone & Associates, whose business address is 22974 El Toro Rd., Suite 100, Lake Forest, CA 92630-4961.

On **April 25, 2016**, I served the foregoing document(s):

**DECLARATION OF JAMES STEPHEN HUTTON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

on the following parties in this action addressed as follows:

## SEE ATTACHED SERVICE LIST

_____ *(BY MAIL)* I caused a true copy of each document, placed in a sealed envelope with postage fully paid, to be placed in the United States mail at Lake Forest, California. I am "readily familiar" with this firm's business practice for collection and processing of mail, that in the ordinary course of business said document(s) would be deposited with the U.S. Postal Service on that same day. I understand that the service shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained on this affidavit.

_____ *(BY PERSONAL SERVICE)* I delivered each such document by hand to each addressee above.

_____ *(BY OVERNIGHT DELIVERY)* I caused a true copy of each document, placed in a sealed envelope with delivery fees provided for, to be deposited in a box regularly maintained by Federal Express or Overnight Express. I am readily familiar with this firm's practice for collection and processing of documents for overnight delivery and know that in the ordinary course of Quintilone & Associates' business practice the document(s) described above will be deposited in a box or other facility regularly maintained by Federal Express or Overnight Express or delivered to a courier or driver authorized by Federal Express or Overnight Express to receive documents on the same date it is placed at Quintilone & Associates for collection.

_____ *(BY FACSIMILE)* By use of facsimile machine number 949.458.9679, I served a copy of the within document(s) on the above interested parties at the facsimile numbers listed above. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

\_\_\_X\_\_ *(BY E-MAIL)* I caused a true and correct copy of each document to be delivered by Electronic Mail through the Court's ECF System.

Executed on **April 25, 2016** at Lake Forest, California.

\_\_\_X\_\_\_\_ **(FEDERAL**) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____ **(STATE**) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
ALVIN B. LINDSAY

-1-
PROOF OF SERVICE

## SERVICE LIST

| | |
|---|---|
| Joel Cohn, Esq.<br>Donna M. Mezias Esq.<br>Ashley Keapproth, Esq.<br>Liz K. Bertko Esq.<br>Akin Gump Strauss Hauer & Feld LLP<br>580 California Street, Suite 1500<br>San Francisco, CA 94104<br>Telephone: 415.765.9500<br>Facsimilie: 415.765.9501<br>jcohn@akingump.com<br>dmezias@akingump.com<br>akeapproth@aikingum.com<br>lbertko@akingump.com | Attorneys for Defendants<br>. |
| Daren H. Lipinski Esq.<br>Brown & Lipinski<br>5811 Pine Avenue, Suite A<br>Chino Hlls, California 91709<br>Tel (909) 597-2445<br>Fax (909) 597-6199<br>Email dlipinsky@aol.com | Co-Counsel for Plaintiffs and Class |

**Q&A Case No.: 14.01174**